## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| EARNEST E. WARHURST, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 14-00245-N |
| | ) | |
| ONE TWENTY FOOT BERTRAN, 1969 | ) | **IN ADMIRALTY** |
| Model Year, bearing Alabama | ) | |
| Registration No. AL8238LM, her | ) | |
| engines, tackle, equipment, | ) | |
| appurtenances, and attached travel | ) | |
| trailer, etc., *in rem*, and DAVID L. | ) | |
| JONES, *in personam*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This action is before the undersigned United States Magistrate Judge for final disposition, with the express written consent of the parties, pursuant to 28 U.S.C. § 636(c). *See* Docs. 15, 16. This lawsuit was tried before the Court, without a jury, December 30, 2014. (Doc. 62).   Present at the trial were the following: plaintiff, Eugene Warhurst, Esq., along with his counsel of record, Gregory Buffalow, Esq., and defendant/counter-plaintiff David Jones, along with his counsel of record, Daniel Sayers, Esq.

In rendering judgment following a non-jury trial, FED. R. CIV. P. 52(a) requires the Court to make specific findings of fact and to state conclusions of law separately. The rule "does not require a finding on every contention raised by the parties," but requires the Court to provide sufficient detail demonstrating that care

was taken in ascertaining and analyzing the facts necessary to the decision and to provide "sufficient particularity" to facilitate meaningful review. *Feazell v. Tropicana Prods., Inc.*, 819 F.2d 1036, 1042 (11th Cir. 1987). Thus, in accordance with the requirements of Rule 52(a), having heard and considered all of the testimony[1], evidence, and arguments presented at trial, the Court now enters the following findings of fact and conclusions of law.

## I. Background and Principal Contentions of the Parties

This case involves the possession of a 20-foot Bertram[2] watercraft, 1969 Model Year, bearing Alabama Registration No. AL8238LM (hereafter "the Bertram", "the boat", or "the vessel") and sued here *in rem*.  The value of the vessel is estimated at $15,000. *See* Doc. 1 at 4.  The parties do not contest title to the boat, which lies with Plaintiff Earnest Warhurst (hereafter "Plaintiff"). Rather, the parties contest *possession* of the boat, and Defendant David Jones (hereafter "Defendant") brings  a counterclaim seeking payment for repairs made to the boat.[3]

The boat is currently under the arrest of the United States Marshal. (Doc. 2). Prior to being arrested, it was in the possession of the Defendant since at least June 2013 for the purposes of making repairs.[4] (Doc. 1 *compare* Doc. 9). The Plaintiff

---

[1] The following three witnesses testified at trial: Adam Beech, Eugene Warhurst, and David Jones.

[2] The docket sheet and parties' filings identify the vessel as a "Bertran." The Court understands the boat to be the common make "Bertram." In either case, the boat is identifiable by its Alabama registration number.

[3] In the Amended Counterclaim , Jones seeks "$4,155.00 in work and labor plus $10.00 per day in storage from October 10, 2013 to date."  (Doc. 31)

[4]  Adam Beech testified that the Bertram sank on June 3, 2013, while moored in Plaintiff Warhurst's boat slip.

contends that he has fully paid for all repairs made by the Defendant and brings this Rule D Possessory action in order to restore his possession of the Bertram. The Plaintiff contends that the Defendant continues to withhold his boat (up until the time of arrest) despite requests for return. (Doc. 1 at 3).

In response, the Defendant[5] contends that he is owed $4,1550.00 for repairs and improvements made to the boat. (Doc. 31 at 1). He further contends that his possession of the boat was based on a mechanic's lien due to the Plaintiff's non-payment. (Doc. 9 at 3) Jones also seeks fees of $10.00 per day for storing the boat from October 10, 2013 to June 6, 2014. (Doc. 31 at 2).

## II. Jurisdiction

Venue and personal jurisdiction are proper because the events giving rise to this claim occurred in the Southern District of Alabama (Baldwin County). Whether subject-matter jurisdiction is proper has been a significant source of contention in this case. (*See* Docs. 23, 36, 27). After ordering briefing and hearing oral arguments of counsel, the undersigned ultimately concluded that this Court has admiralty/maritime jurisdiction in this case pursuant to 28 U.S.C. § 1333 ("The district courts shall have original jurisdiction … [over a]ny civil case of admiralty or maritime jurisdiction . . .").[6]

---

[5] The counterclaim is treated by the Court as being originally brought by Pirate Marine, LLC, a joined real party in interest, which is wholly owned by Defendant David Jones and through which the repairs were made. Doc. 35; Doc. 31 at 1.

[6] Plaintiff invokes *in personam* jurisdiction over Defendant David Jones, who appears to be an Alabama citizen like the Plaintiff.

"Under Rule D . . . a party can bring a claim for possession and to try title with respect to a vessel or other maritime property. 'Petitory suits are suits in which it is sought to try the title to a ship independently of any possession of the vessel' [while] 'possessory actions are actions to recover vessels or other property to which an owner, seaman or lienor is of right entitled.' " *Santiago v. Evans*, 2012 WL 3231025, at *3 (M.D. Fla. June 21, 2012) (quoting *Thypin Steel Co. v. Asoma Corp.*, 215 F.3d 273, 282 (2d Cir. 2000)), *report and recommendation adopted*, 2012 WL 3231016 (M.D. Fla. Aug. 6, 2012), *aff'd*, 547 Fed. App'x 923 (11th Cir. Nov. 4, 2013) (per curiam).

As the former Fifth Circuit[7] explained in *Richard Bertram & Co. v. The Yacht, Wanda*, also "a suit in the nature of a possessory or petitory action brought in admiralty by the plaintiff[,] . . . [t]he mere fact that a ship is involved will not bring [a] cause within the jurisdiction of the admiralty court." 447 F.2d 966 (5th Cir. 1971) at 967-68. Although, Plaintiff has alleged legal title to the defendant vessel (as is required under Supplemental Admiralty Rule D, as opposed to merely alleging equitable interest in the vessel[8]), Defendant has answered that legal title to the vessel is not in dispute. (Doc. 54 at 1-2). Defendant has furthered answered that

---

[7] The decisions of the former Fifth Circuit rendered prior to October 1, 1981, have been adopted as binding precedent by the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[8] "[T]he party urging arrest in the Rule D action must have legal title or a legal claim to possession in order for the Rule D arrest to stand." *Santiago*, 2012 WL 3231025, at *7 (citing *Gulf Coast Shell & Aggregate LP v. Newlin*, 623 F.3d 235, 239 (5th Cir. 2010) ("[A]dmiralty has jurisdiction in a possessory suit by the legal owner of a vessel who has been wrongfully deprived of possession. A petitory action (to try title) under Rule D requires [a] plaintiff to assert a legal title to the vessel; mere assertion of an equitable interest is insufficient." (citations and internal quotation marks omitted))).

4

his right to possession of the boat is based on a common-law lien, not the right of title; he contends that it is possession claims based on the right of title which are in the jurisdiction of the admiralty court. (*Id.*)

It does not appear, either from Rule D or from other court opinions, that *dispute* of legal title is required for Rule D possessory action. Rule D makes note both of actions for possession and of actions to quiet title. FED. R. CIV. P. SUPP. D (". . . actions for possession, partition, and to try title . . ."). Additionally, the former Fifth Circuit has recognized that suits for possession based on the claimant's right to title are properly within the admiralty jurisdiction of the federal judiciary. *Gallagher v. Unenrolled Motor Vessel River Queen*, 475 F.2d 117 (5th Cir. 1973) (*citing Ward v. Peck*, 59 U.S. 267 (1855)). A possessory suit will not lie to "enforce a merely equitable title of one out of possession." *Stathos v. The MARO*, 134 F. Supp. 330, 332 (E.D. Va. 1955); *see also The Nellie T.*, 235 F. 117 (2nd Cir. 1916). Admiralty jurisdiction also does not extend to a dispute over a contract to build a vessel, in part because the claimant has not yet possessed the vessel in question. *Richard Bertram & Co. v. Yacht Wanda*, 447 F.2d 966, 967 (5th Cir. 1971). Rather, a claimant must assert that he or she is the legal owner of a vessel *and* that he or she has been deprived of possession. *Barsom v. P/V Aquidneck Ferry*, 2013 WL 5447551, at *2 (D.R.I. Sept. 30, 2013).

Other courts have found Rule D possessory jurisdiction in lienor-type situations such as that presented by Defendant's mechanic's lien. In *Gallagher*, the former Fifth Circuit found that jurisdiction was proper in a dispute as to who

should possess a boat following non-payment of slip rental. 475 F.2d 117, 118 (1973). This set of facts is notably similar to the present case, where Defendant refused to release the Bertram due to unpaid repair bills. The fact that the opposing rights (mechanic's lien) alleged by the Defendant are based on state law does not defeat admiralty jurisdiction. Rather, jurisdiction is proper in a Rule D possessory suit where the Plaintiff alleges "ownership, right to immediate possession, [and] an unlawful . . . detention by defendant . . ." *Jones v. One Fifty Foot Gulfstar Motor Sailing Yacht, Hull No. 01*, 625 F. 44, 47 (5th Cir. 1980). Here, the Plaintiff makes all those claims. (*See* Doc. 1 *generally*).

### III. Procedural History

The Plaintiff filed a verified complaint on June 3, 2014, seeking immediate arrest of the Bertram. (Doc. 1). The arrest warrant issued on June 5, 2014, and was executed the following day. (Docs. 4,7). Sportsman's Marine was appointed substitute custodian and has had physical possession of the boat since it was arrested. (Docs. 3, 6). The Plaintiff's only claim for relief is that "the Court order that the possession of the said vessel be restored to the Plaintiff; and that Plaintiff have and receive such other, different and further relief to which it is entitled in the premises." (Doc. 1 at 4). The Plaintiff contends, in sum, that possession is due to him because he has previously paid for the repairs performed by the Defendant. (*Id.* at 3).

The Defendant responded that a Rule D suit was inappropriate on the facts of this case (addressed above in the "Jurisdiction" finding) and maintains that he

rightfully had possession of the boat based on a mechanic's lien and a statutory lien under Ala. Code § 35-11-60 based on Plaintiff's failure to pay for repairs to the boat. (Doc. 9 at 2-3). In his answer, Defendant brought a counterclaim on two counts. (*Id.* at 4-5). In the first count, he sought payment from Plaintiff for unpaid repair bills of $2,230.00 and for storage of the vessel for one year at $10.00 per day (from June 2013 to June 2014, amounting to $3,650.00). (*Id.* at 4). In the second count, Defendant sought unspecified damages from substitute custodian Sportsman's Marine and from the U.S. Marshal for alleged damage to a vehicle and Defendant's yard caused during arrest of the vessel. (*Id.* at 5).

The Defendant voluntarily dismissed the second count of his counterclaim shortly after filing it, stating that he intended to bring the claim against Sportsman's Marine and the U.S. Marshal in a different action. (Docs. 14, 17). The Defendant's first claim was superseded by an amended counterclaim on August, 19, 2014. This operative counterclaim seeks $4,155.00 in unpaid repair bills from Plaintiff, but seeks storage fees from only October 10, 2013 to the date of the vessel's arrest (June 6, 2014). (Doc. 31 at 1). The counterclaim is treated by the Court as being originally brought by Pirate Marine, LLC, which wholly owned by the Defendant, because the repairs were done through Pirate Marine. (Doc. 35); *see* FED. R. CIV. P. 17(a)(3).

Plaintiff admits that he employed the Defendant to make repairs to the Bertram. (Doc. 36-1 at 2). However, he contends that he fully paid the Defendant

and that there was no agreement, express or implied, requiring payment for storage. (*Id.*)

## IV. Findings of Fact and Conclusions of Law

### A. Ownership of the Bertram

The Defendant does not dispute that the Plaintiff is the true owner of the Bertram and does not claim any ownership right or right to use the boat. Doc. 9 at 3. As the undisputed true owner, the Plaintiff would normally be entitled to possession of the Bertram. *See, e.g.*, *Smith v. Purvis*, 474 So. 2d 1131, 1132 (Ala. Civ. App. 1985).

### B. Statutory Lien

The Defendant advances two theories for acquiring a lien on the vessel. The first theory is a claim under Ala. Code § 35-11-60, which allows for a preferential lien for work performed on any watercraft in the state. The statute of limitations under Ala. Code § 35-11-60 is six months from the date the demanded payment was due. *See*, *First Maryland Leasecorp. v. M/V Golden Egret*, 764 F. 2d 749, 757 (11th. Cir. 1985); *see also*, *The Edna*, 185 F. 206 (S.D. Ala. 1911). The Defendant filed his answer and counterclaim arguing for a lien on June 23, 2014. (Doc. 9). The Defendant had previously issued several invoices to the Plaintiff through Pirate Marine. (*See* Doc. 68). The last one that has new charges on it, other than storage fees, is dated September 28, 2013. (*Id.* at 2 (Def. Ex. 2)). Based on that timeframe as a starting date, the six-month limitations period would have run on March 28, 2014.

Consequently, the Defendant did not bring his suit in time to procure a lien under Ala. Code § 35-11-60.

*C. Mechanic's Lien*

The second theory advanced by the Defendant for procuring a lien is a common law mechanic's lien. (Doc. 9 at 3). In Alabama, a mechanic's lien exists at common law, which is distinct from the statutory lien; it is possessory and is lost upon release of the property. *Peavy's Service Center, Inc. v. Associates Financial Services Co., Inc.*, 335 So. 2d 169, 170 (Ala. Civ. App. 1976). The two liens serve the same purpose, but are "distinct and separate." *Id.* The common law lien does not have the same limitations period, but rather holds "so long as the machine repaired is in the possession of the mechanic and his claim is due and unpaid." *Howell v. Dodd*, 157 So. 211, 213 (Ala. 1934). The vessel was in the Defendant's possession at the time of its arrest and the Defendant asserted his mechanic's lien in court immediately upon the arrest.

*D. Breach of Contract*

The elements of a contract are "(1) an offer and acceptance, (2) consideration, and (3) mutual assent to the essential terms of the contract." *Perkins v. Johnson*, 866 So. 2d 1146, 1149 (Ala. Civ. App. 2003) (citing *Southern Energy Homes, Inc. v. Hennis*, 776 So. 2d 105 (Ala. 2000). The elements of an ordinary breach of contract action are "(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the [other party's] nonperformance, and

(4) damages." *Perkins,* 866 So. 2d 1146, 1149 (citing *Southern Med. Health Sys., Inc.*
*v. Vaughn,* 669 So. 2d 98, 99 (Ala. 1995)).

There is no dispute that the two parties had a binding agreement with regard
to the repair and improvement of the vessel. (*See* Doc. 36-1 at 2 ("It is admitted that
David Jones, Jr. was employed . . . to make certain repairs [to the vessel]")). The
"essential terms" are supplied by the parties' previous course of dealing (*See*
*Marshall Durbin Farms, Inc. v. Fuller*, 794 So. 2d 320, 325 (Ala. 2000) ("A course of
dealing 'is relevant not only to the interpretation of express contract terms, but may
[itself] constitute contract terms' " (internal citations omitted))) and by the
Plaintiff's assent to have his vessel repaired. *See Hendrix, Mohr & Yardley, Inc. v.*
*City of Daphne,* 359 So. 2d 792, 795 (Ala. 1978) ("It is the settled law of this State
that where one knowingly accepts services rendered by another, and the benefit and
result thereof, the law implies a promise on the part of the one accepting with
knowledge the services rendered by another to pay the reasonable value of such
services rendered." (internal citations omitted)). Additionally, there is no dispute
that the Defendant completed his performance under the implied contract between
the parties. The Plaintiff stated on the stand that the work was acceptable to him.[9]
What is disputed is whether the Plaintiff performed under the contract and whether
the Defendant is owed any damages. The Plaintiff contends that he has fully paid

---

[9] Specifically, the Plaintiff testified that the livewell was good and that he inspected same and that
Jones showed him all the switches. Plaintiff also concedes that he authorized replacement of the
starter switch, and a new battery.  Finally, plaintiff testified that he had no complaints about the
work done by the Defendant in putting a mascerator pump into the fish box.

the Defendant (*See* Doc. 36-1 at 2), while the Defendant contends he is owed money for unpaid bills delivered to the Plaintiff. (*See* Doc. 31 at 1).

Based on the testimony of both the Plaintiff and the Defendant, it is the conclusion of the Court that the invoices submitted by the Defendant were in fact delivered to Plaintiff Warhurst and that they accurately reflect the work performed by Defendant Jones. (*See* Doc. 68 at 1-2).

The first invoice (Def. Ex. 1) reflects several cash payments and offsets and, allowing for these, represents an outstanding balance of $2230.00. The second invoice (Def. Ex. 2) references the outstanding balance of the first invoice and represents an additional balance of $1925.00 in unpaid repairs, for a total of $4155.00. The second invoice also includes a disclaimer at the bottom that "Any boat not paid for are picked up within 10 days of bill date will be charged $10 per day in storage." (sic) (Doc. 68 at 2).[10]  The third, fourth, and fifth invoices are identical to the second *except* that they add additional charges for storage of the boat, consistent with the disclaimer included on the second invoice. (*Id.* at 3-5).

The only proof of payment made by the Plaintiff is a check for $800.00 that the Defendant Jones made out to himself from the bank account of the LLC, which was jointly owned by the Plaintiff and the Defendant for the purposes of carrying out a charter fishing enterprise on a different vessel, the M/V Wishbone. *See*, Doc. 68 at 9 (Def. Ex. 9, Plaintiff's Trial Ex. 1).[11]  The parties agreed at trial that the

---

[10] The Court assumes that "are" in this disclaimer is meant to be either "or" or "and".

[11] Plaintiff maintains that the Bertram was used to support a charter fishing operation.  Namely, to deliver supplies, bait, etc. to the M/V WISHBONE.  However, plaintiff Warhurst testified that he did

Plaintiff was responsible for contributing most, if not all, of the money in this bank account. Additionally, it was not the LLC that owed the Defendant for the repairs, but the Plaintiff personally. Consequently, the Court credits the full $800.00 toward the unpaid repair bills.

The Defendant testified that the Plaintiff had paid for the $300.00 starter included on the first invoice (Doc. 68 at 1) and that he (the Defendant) had not meant to include that line on the invoice. Since the Defendant admits that this amount was paid, it is also credited toward the repair bills. Subtracting both the starter ($300.00) and the check ($800.00), the unpaid repair bills are reduced to a total of $3055.00.

### E. Storage Fees

The Plaintiff next contends that storage fees sought by the Defendant were never agreed to. (Doc. 36-1 at 2). However, the amended counterclaim seeks storage fees beginning from October 10, 2013, which is more than 10 days after the disclaimer given on the second invoice regarding storage. (*See* Doc. 31 at 1; Doc. 68 at 2). Additionally, such storage fee warnings are typical practice in the boat repair business, as shown by the invoice from Pro Tec Marine for the Defendant's purchase of parts for the Bertram. (Doc. 68 at 8 (Def. Ex. 6)) ("Any boat left 10 days after completion or refusal of work will be charged $10.00 a day storage.") The Plaintiff had more than ten days to pay the outstanding bills and collect his boat, but he did

---

not recall the dates he used the Bertram to deliver ice/bait to the M/V Wishbone and conceded on cross-examination that he was unsure if he in fact used his Boston Whaler or the Bertram for the delivery.  He further testified that the Bertram was not in use (inoperable) June, July, August or September of 2013.

neither. There is also no indication that the Plaintiff attempted to object to the imposition of storage fees during the 10-day period following the issuance of the second invoice. Consequently, the Court awards storage fees to the Defendant in the amount of $2,450.00 ($10.00 per day beginning on October 10, 2013, and ending on the day the vessel was arrested, June 6, 2014, a total of 245 days).

## V. Conclusion

For the foregoing reasons, the Court finds in favor of Defendant/Counterclaimant David Jones as to the claim for damages, in the amount of $5,505.00, consisting of $3055.00 in unpaid repair bills and $2,450.00 in storage fees. A separate judgment shall issue.

The substitute custodian, Sportsman's Marine, is **ORDERED** to immediately release to Plaintiff Eugene Warhurst the vessel bearing Alabama Registration No. AL8238LM.

**DONE** and **ORDERED** this the 13th day of March 2015.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**